IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GRAND JURY SUBPOENAS TO MARK FAINARU-WADA and LANCE WILLIAMS | No. CR 06-90355 JSW<br><br>**ORDER DENYING MOTION TO QUASH SUBPOENA** |
| / | |

### INTRODUCTION

This matter comes before the Court upon consideration of the *San Francisco Chronicle's* ("*Chronicle*") motion to quash a grand jury subpoena. Having considered the parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY DENIES the motion to quash.

### BACKGROUND

This case is one of two cases pending before this Court, which arise out of a series of articles published in the *Chronicle* and authored by Mark Fainaru-Wada ("Fainaru-Wada") and Lance Williams ("Williams") (collectively "Reporters"). Facts pertinent to this motion are recounted in the Court's Order denying the Reporters' motion to quash and shall not be repeated here. *See In re Grand Jury Subpoena to Mark Fainaru-Wada and Lance Williams*, 438 F. Supp. 2d 1111, 1113-14 (N.D. Cal. 2006) (hereinafter "*In re Fainaru-Wada/Williams*").

The *Chronicle's* reply in support of its motion, however, necessitates further elaboration on the terms of the Stipulated Protective Order ("Protective Order") issued by Judge Illston in *United States v. Conte, et al.*, CR-04-44-SI (the "BALCO litigation").

The Protective Order defined "Sealed Material" to include "[a]ll transcripts of grand jury proceedings." (*Id.* at 2:16-17.) The parties agreed that "Sealed Material" would be

> furnished, at this time, **to no one other than**: (1) counsel for defendants Conte, Valente, Anderson, and Korchemny; (2) defendants Conte, Valente, Anderson, and Korchemny; and (3) the staff supporting counsel for defendants Conte, Valente, Anderson, and Korchemny in the above-captioned case, such as investigators, paralegal assistants, secretarial, stenographic, and clerical employees who are working on this case under the direction of counsel for defendants Conte, Valente, Anderson and Korchemny and to whom it is necessary that the materials be disclosed for purposes of the defense of this case. *All such material shall be used **solely** for the purposes of conducting pretrial, trial, and appellate proceedings in this case and for no other purpose whatsoever, and shall not be disseminated to the press* or used for economic benefit by counsel for defendants Conte, Valente, Anderson, or Korchemny the defendants themselves, or the support staff of defense counsel.

(*Id.* at 2:21-3:7 (emphasis in bold as in original, emphasis in italics added).)

The Government and "attorneys for the U.S. government authorized by federal rules and regulations to have access to the material; (2) law enforcement agents authorized by the federal rules and regulations to have access to the material; and (3) the staff supporting the prosecution in the above captioned case ...." were subject to these same requirements. (*Id.* at 3:8-18). The Protective Order also provided that "[t]he United States and defendants Conte, Valente, Anderson and Korchemny and their counsel in the above-captioned case may not *disclose* Sealed Material to any other person without prior Court approval and notice to opposing counsel in advance of any additional disclosure." (*Id.* at 3:23-26 (emphasis added).)

The terms of the Protective Order further provide that "[n]othing herein shall prevent either the United States or the defendants Conte, Valente, Anderson and Korchemny and their counsel from using the Sealed Material or from referring to or reciting from any information contained in such Sealed Material in connection with pleadings or motions filed in this case, provided that the Sealed Material itself is only filed under seal and/or submitted to the Court for *in camera* inspection. The use of Sealed Material at trial or pre-trail or post-trial hearing will be

1 resolved at or before the time of trial or hearing." (*Id.* at 4:1-6.) Finally, the parties agreed that
2 a violation of the Protective Order "may be punishable by contempt of court, whatever other
3 sanction the Court deems just, and/or any other sanctions which are legally available." (*Id.* at
4 4:7-9.)

5      On April 19, 2006, the Government issued a grand jury subpoena to the *Chronicle*
6 requiring the *Chronicle's* custodian of records to appear before the grand jury and to produce
7 documents regarding the source of the grand jury transcripts disclosed in the articles. The
8 subpoena was served on or about May 5, 2006.[1] (Declaration of Christopher J. Morvillo
9 ("Morvillo Decl.") ¶ 2, Ex. 1; Declaration of Brian Hershman ("Hershman Decl.") ¶ 2.)[2]

10      Paragraph 6 of the subpoena requests that the *Chronicle* produce "[a]ny information in
11 your possession regarding the identity of the individual or individuals who provided the
12 Chronicle a copy of any grand jury transcript pertaining to Grand Jury Investigation Number
13 2002R01596, or who disclosed information about the content of any such witness' grand jury
14 testimony." (Morvillo Decl., Ex. 1.)

15      Over the course of several months, the *Chronicle* and the Government engaged in
16 discussions regarding the documents requested, and the *Chronicle* contended that it had no
17 documents responsive to the subpoena. (*See* Morvillo Decl. ¶¶ 3-12, Exs. 2-6; Hershman Decl.
18 ¶¶ 3-6.) The parties dispute whether an agreement was reached regarding the scope of the
19 information requested in the subpoena and in particular with respect to the second clause of
20 paragraph 6. (*Id.*)

21      The apparent dispute over the meaning of the second clause of paragraph 6 prompted the
22 *Chronicle* to file the instant motion to quash on September 1, 2006.

---

26 [1] On July 19, 2006, the Government issued a new subpoena to the *Chronicle,*
27 which was identical in all respects to the original subpoena except that it included definitions and instructions. (Morvillo Decl., Ex. 7.)

28 [2] The Hershman Declaration is attached as Exhibit 1 to the Government's Opposition to the *Chronicle*'s motion to quash.

3

**ANALYSIS**

**A.   The *Chronicle* Cannot Refuse to Comply With the Subpoena Based Upon the Assertion of a First Amendment or Common Law Reporters' Privilege.**

The *Chronicle* adopts and incorporates by reference all of the arguments raised by the Reporters in their motion to quash. (Motion at 2 n.1.) The Court DENIES the motion to the extent it rests on the assertion of a First Amendment or Common Law Reporters' privilege for the reasons set forth in *In re Fainaru-Wada/Williams*, 438 F. Supp. 2d at 1115-20.

The *Chronicle* also argues that the Court should consider the First Amendment and Rule 501 issues in light of what it contends is a new and overly broad Government interpretation of the subpoena. The *Chronicle* contends that this new interpretation impacts the question of whether the grand jury is operating in good faith. At the time it ruled on the Reporter's motion, the Court had before it the now disputed language of paragraph 6 and finds no basis to revisit its previous finding that there has been no abuse of the grand jury process. Accordingly, the motion to quash also is DENIED on that basis.

**B.   The Subpoena Is Not Unreasonable or Oppressive and the Information Sought Is Relevant.**

"[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *United States v. R. Enterprises*, 498 U.S. 292, 301 (1991). The *Chronicle* renews the contention that the subpoena is unreasonable and oppressive under Federal Rule of Criminal Procedure 17(c) because it interferes with the ability "the press' ability to fulfill its core First Amendment function of informing the public on matters of public concern ... [and is] destructive of the reporter's confidential source relationships." (*See* Reporters' Motion to Quash at 47.)[3] Thus, in essence, the *Chronicle* again asks the Court to determine that, in the absence of a privilege, the interests in maintaining the free flow of information outweigh any interests the grand jury may have in obtaining the information requested. For the reasons set

---

[3]   Attached as Exhibit A to Huseny Declaration.

forth in *In re Fainaru-Wada/Williams*, the Court DENIES the motion on this basis. *See* 438 F. Supp. 2d at 1120-21.

The *Chronicle's* new argument is also premised on a contention that the information sought by the Government is not relevant to the grand jury investigation and that the overly broad scope of the information requested renders the subpoena unreasonable and oppressive. When a party challenges a grand jury subpoena "on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable probability that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301.

The grand jury

> is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike this Court, whose jurisdiction is predicated on a specific case or controversy, the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush.* "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'"

*R. Enterprises*, 498 U.S. at 297 (emphasis added). While the grand jury's investigatory powers are broad in scope, the Court recognizes that they are not unlimited. "Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *Id.* (citations omitted).

The *Chronicle* urges the Court to find the subpoena unreasonable and oppressive and lacking relevance to the grand jury investigation based upon a distinction between disclosure of the "content" of grand jury testimony and disclosure of the physical transcripts. The grand jury in this case is investigating whether or not a person or persons: (1) violated the terms of Judge Illston's Protective Order; (2) committed perjury; (3) obstructed justice; (4) or violated Federal Rule of Criminal Procedure 6(e). In light of the scope of that investigation, and considering the terms of the Protective Order and the concerns raised by Judge Illston during the course of the

5

1  BALCO litigation, this Court can find no meaningful distinction between disclosure of the
2  physical grand jury transcripts and disclosure of the content of those transcripts.  Accordingly, it
3  concludes that the *Chronicle* has not met its burden to show that the subpoena, as drafted, is
4  unreasonable or oppressive or that there is no reasonable probability that the category of
5  materials the Government seeks will produce information relevant to the general subject of the
6  grand jury's investigation.

   However, the Government has agreed to limit the scope of paragraph 6 of the subpoena.
The Court shall hold the Government to its representation.  Thus, although the Court DENIES
the motion to quash, it does so subject to the issuance of a protective order.

## CONCLUSION

For the reasons set forth above, the motion to quash the subpoenas is DENIED, subject
to the protective order outlined below.

Accordingly, the *Chronicle* is HEREBY ORDERED to have its Custodian of Records
appear before the grand jury at a date and time to be determined by the Government to provide
information the information called for by the subpoena.  The *Chronicle's* obligations with
respect to paragraph 6 are expressly limited to providing information regarding the identity of:
(1) those individuals who worked for the United States Attorney's Office or the government
agencies that worked with it on *United States v. Conte, et al.*, CR-04-44-SI; (2) those
individuals who were counsel or parties in *United States v. Conte, et al.*, CR-04-44-SI; or (3)
those individuals who submitted a declaration in response to the Honorable Susan Illston's order
requiring such declarations in the BALCO litigation.

**IT IS SO ORDERED.**

Dated: September 25, 2006

                                                JEFFREY S. WHITE
                                                UNITED STATES DISTRICT JUDGE